UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
RAVI KALIA,                                                              :
:
:
Plaintiff,                                          :
:         19-CV-6242 (JMF)
-v-                                         :
:         OPINION AND ORDER
CITY UNIVERSITY OF NEW YORK, et al.,                                     :
:
Defendants.                                         :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Ravi Kalia, a tenured professor of history at the City College of New York ("CCNY") within the City University of New York ("CUNY") system, brings this suit against CUNY and three CUNY employees (the "Individual Defendants"). In particular, Kalia raises a slew of discrimination, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*. He also brings state common-law claims against the Individual Defendants for tortious interference of contract and tortious interference with a potential economic advantage. Defendants now move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss Kalia's claims. *See* ECF No. 33. For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

      The following relevant facts are drawn from the First Amended Complaint ("Complaint"), *see* ECF No. 30 ("FAC"), except where noted, and are taken as true for purposes of this motion. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 147, 152 (2d Cir. 2013).

Kalia, who is of Indian descent, has been a history professor at CCNY since 1993. FAC ¶ 30. He alleges that he has long faced obstacles to promotion at the school. Although he sought tenure in 1995, for instance, he was not promoted to that status until January 1, 2003, after he filed a lawsuit in this District challenging CUNY's review procedures and filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶¶ 31-32, 44-48, 68-71. In 2008, Kalia applied for distinguished professorship status, a distinction that came with additional compensation and reputational benefits. *Id.* ¶¶ 15, 77. According to the Complaint, however, his application stalled at the divisional review level due to "disparate treatment, discrimination and retaliation against him." *Id.* ¶ 79. In 2012, following a change in the school's administration, Kalia considered reapplying for a distinguished professorship, but his attempt was thwarted by Paul Occhiogrosso, counsel to the President of CCNY, and then-Dean of Humanities Eric Weitz. *Id.* ¶¶ 9-10, 80. Weitz — a Caucasian man — submitted his own name for a distinguished professorship and, with Occhiogrosso's endorsement, convinced the history department chair to inform the school provost that the department's executive committee was unable to process Kalia's application at the time. *Id.* ¶¶ 80-83. Weitz's own bid was eventually approved even though, as an administrator, he was not eligible for distinguished professorship status pursuant to the school's collective bargaining agreement. *Id.* ¶ 85.

The events giving direct rise to Kalia's claims in this suit began in 2015. In February of that year, he once again renewed his bid for distinguished professor status, only to face more push back. *Id.* ¶¶ 93-94. Seemingly at the behest of Occhiogrosso and Weitz, and although not required by CCNY's by-laws, the then-chair of the history department Craig Daigle required Kalia to supplement his application with a nomination from within the department. *Id.* ¶¶ 96-97. According to Kalia, past applications for distinguished professorship status by non-Asian, non-

2

Indian professors who had not previously complained of discrimination, including Weitz's, were considered with only a single nomination from outside the department. *Id*. ¶¶ 98-99. After receiving pressure from others, including Michelle Baptiste, the then-Dean of Diversity, Daigle eventually rescinded this requirement in May 2015 and proceeded on the basis of the two nominations in Kalia's file. *Id*. ¶ 100. Daigle did not treat the application of Beth Baron, a female Caucasian applicant, in the same manner. *Id*. ¶¶ 101, 108.

Nevertheless, on November 20, 2015, an ad hoc committee declined to advance Kalia's application. *Id*. ¶¶ 106, 109. According to the Complaint, the ad hoc committee was merely supposed to ensure that Kalia's and Baron's applications were complete (Kalia's file was missing letters of reference), *id*. ¶¶ 106-09, 112, but the committee "overstepped its mandate" by rendering an adverse decision against Kalia, *id*. ¶ 113. Lisa Cocio, then the President of CCNY, eventually overturned the committee's decision and referred Kalia's application to Baptiste. *Id*. ¶ 114-15. According to the Complaint, Baptiste found that Weitz and Occhiogrosso had attempted to thwart Kalia's efforts to become a distinguished professor because he "had litigated against CCNY." *Id*. ¶¶ 116-22. In the spring of 2016, Kalia "worked with Baptiste to get a new committee created" to review his candidacy. *Id.* ¶ 123. Later that year, Cocio resigned and Vincent Boudreau became President of CCNY. *Id*. ¶¶ 124-25. Under Boudreau's leadership, Kalia's application remained stagnant. Kalia complained of discrimination and lack of inclusiveness at CUNY to Boudreau in March 2017, but Boudreau did nothing to address Kalia's concerns. *Id*. ¶ 129. Instead, Boudreau helped dismantle the President's Council on Diversity. *Id*. ¶ 130. Kalia also met with Boudreau in April 2017 to discuss his distinguished professorship application. *Id*. ¶ 131. Although Boudreau assured Kalia that he had not "lost any ground," *id.*, Boudreau eventually reversed course and informed Kalia by email on August 3, 2017, that

Boudreau would not take any action on Kalia's application because of the ad hoc committee's November 2015 decision. *See* ECF No. 34-3, at 15 ("August 3, 2017 Email"). Specifically, Boudreau explained that "Distinguished Professor applications only come before the College President upon recommendation of the [Review Committee], and review and recommendation by the Faculty Committee Personnel Matters" and that he would not take further action on Kalia's application because it did not "reach that level." *Id.* The following year, Kalia "sought to reboot" his application, but it "continued to languish" due, in part, to Occhiogrosso's and Weitz's continued interference. ECF No. 55 ("Kalia Decl."), ¶¶ 14-22. On June 19, 2020, Kalia was advised that his bid would be ripe for review in the fall. *Id.* ¶ 23.

Separate and apart from Kalia's efforts to obtain a distinguished professorship, in June 2015, he was awarded a salary supplement "to assist in raising awareness, and increasing the participation, of CCNY with regard to [the Asian American/Asian Research Institute] and its programming." FAC ¶ 138. Kalia's salary supplement, however, was not renewed for the 2017-2018 year "[d]espite his ongoing efforts for diversity and ongoing development within the courses proffered to students at CCNY." *Id.* ¶ 143. On September 14, 2017, the Provost's Office informed Kalia that his salary supplement was still "pending." *Id.* ¶ 150. Kalia continued to perform the duties associated with the salary supplement in good faith, *id.* ¶ 151, but, at the time the Complaint was filed, he had not received it, *id.* ¶¶ 152-55.

Kalia filed a charge with the EEOC on or about July 5, 2018. ECF No. 30-2 ("EEOC Charge"). On July 3, 2019, Kalia filed this action. In his operative complaint, he alleges that CUNY, through the conduct of Boudreau, Occhiogrosso, and Weitz, violated Title VII by subjecting him to national and race discrimination, a hostile work environment, and retaliation. FAC ¶¶ 175-92, 203-08. Kalia brings parallel claims against the Individual Defendants under

4

the NYSHRL and NYCHRL, and further alleges tortious interference of contract and tortious interference with a potential economic advantage. *Id*. ¶¶ 193-202, 209-37.  The Complaint alleges that Defendants' retaliation continued even after his 2018 EEOC charge.  Specifically, Kalia alleges that after filing the EEOC charge, he once again sought consideration for distinguished professorship.  FAC ¶ 158.  And once again, Occhiogrosso and others sought to block the application based on his litigation against CCNY.  *Id*. ¶¶ 158-173.

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc*., 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id*., and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.  Where, as here, a plaintiff brings claims of employment discrimination, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of

5

discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

Significantly, Rule 12(d) provides that if "matters outside the pleadings" are submitted in connection with a Rule 12(b)(6) motion, a court may consider those documents and treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154-55 (2d Cir. 2006). A district court acts properly in converting a motion to dismiss into a motion for summary judgment when the court gives all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008); *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985). Under Rule 56, summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35-36 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). In ruling on a summary judgment motion, all

evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## FEDERAL CLAIMS

The Court will begin with Kalia's claims under Title VII. He brings four discrete sets of claims: first, a claim for discriminatory failure to appoint him to distinguished professor status; second, a claim for discriminatory non-renewal of his salary supplement; third, retaliation claims; and fourth, a hostile work environment claim. Defendants argue that many of Kalia's claims are time barred, *see* ECF No. 35 ("Defs.' Mem."), at 7-9, and that all fail as a matter of law, *see id.* at 9-15. The Court will address each argument in turn.

### A. Timeliness

Defendants contend that Kalia's discrimination and retaliation claims based on his bid for distinguished professorship and denial of a salary supplement must be dismissed as untimely.[1] In New York, a plaintiff claiming employment discrimination under Title VII must file a charge with the EEOC no more than 300 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1); *Harris v. City of New York*, 186 F.3d 243, 247 n.2 (2d

---

[1] The EEOC issued Kalia a right-to-sue letter on April 4, 2019, and simultaneously closed Kalia's file because his "charge was not timely filed with [the] EEOC." ECF No. 30-1. In light of Defendants' timeliness challenge and out of an abundance of caution, the Court may and does review the Complaint to make its own determinations with respect to the timeliness of Kalia's claims. *See Bivines v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, 284 F. Supp. 3d 587, 589-90 (E.D. Pa. 2018). The Court does not consider the timeliness of Kalia's hostile work environment claim because Defendants did not raise the issue in their motion.

Cir. 1999) (noting that New York is a "deferral state for Title VII" purposes which "calls for application of the 300-day rule"). Crucially, "the word practice in this context refers to a discrete act or single occurrence," and the word "occurred" refers to the day the discrete retaliatory or discriminatory act happened. *Vega*, 801 F.3d at 79 (internal quotation marks omitted). It follows that "[t]imeliness is measured from the date that the employee receives notice of the discriminatory decision." *Walker v. Linklaters LLP*, 948 F. Supp. 2d 396, 399 (S.D.N.Y. 2013).

Kalia's charge is dated June 29, 2018, and was received by the EEOC on July 5, 2018. *See* ECF No. 30-2; *see also* Kalia Decl. ¶ 14. Thus, any claims based on conduct that occurred before September 2, 2017 (or September 8, 2017 — the six days makes no difference) are untimely. That is the case with respect to Kalia's claims arising out of the failed bid for distinguished professorship. According to the Complaint, Kalia applied for the distinguished professorship in February 2015, FAC ¶ 93, and that application was denied by the ad hoc committee on November 20, 2015, *id.* ¶¶ 105, 113; *see* ECF No. 34-3, at 4; August 3, 2017 Email; Defs.' Mem. 4. Arguably, any claims arising from that rejection occurred at that moment — or, to be more precise, when Kalia learned of the decision shortly thereafter. *See, e.g.*, *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (holding in a case involving the denial of academic tenure that the filing limitations period commences "at the time the tenure decision was made and communicated" to the plaintiff). At the latest, however, the clock began to run on August 3, 2017, when Boudreau emailed Kalia and unambiguously advised him that no further action would be taken in connection with his application. *See* August 3, 2017 Email.

The wrinkle is that Boudreau's email is not referenced anywhere in Kalia's Complaint. Instead, in support of their motion to dismiss, Defendants filed their submission to the EEOC, which contained Boudreau's email to Kalia. The Court could probably consider the email

8

anyway, on the ground that it is "integral" to the allegations in the Complaint. *See, e.g.*, *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010). Out of an abundance of caution, however, the Court entered an order inviting supplemental briefing from the parties on "[w]hether and to what extent the Court may consider the August 3, 2017 email in deciding Defendants' motion to dismiss" and "whether the Court should treat the portion of Defendants' motion to which the email relates as a motion for summary judgment." ECF No. 42, at 2. The Court further instructed the parties to "file any materials that they believe are pertinent to the motion, including, but not limited to any additional evidence, affidavits, or declarations." *Id.* (internal quotation marks and citation omitted). Both parties submitted supplemental memoranda, declarations, and additional extrinsic evidence in response. ECF Nos. 46-56. In light of those submissions, the Court can — and, to the extent necessary, does — convert this portion of Defendants' motion to a motion for summary judgment pursuant to Rule 56. *See, e.g.*, *Sahu*, 548 F.3d at 67. So converted, the motion can — indeed must — be granted.

Pointing to emails from earlier this year showing that his application for distinguished professorship is still under review, Kalia's sole argument to the contrary is that his claims are subject to the "continuing violation" doctrine. *See* ECF No. 54, at 5. That doctrine provides that, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001) (internal quotation marks and alteration omitted). The doctrine, however, "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Weslowski v. Zugibe,* 14 F. Supp. 3d 295, 304 (S.D.N.Y. 2014) (internal quotation marks omitted). And in any event, "discrete discriminatory acts" — including

9

"termination, *failure to promote*, denial of transfer, or refusal to hire" — "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-14 (2002) (emphasis added); *see Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) ("[M]ultiple incidents of discrimination, *even similar ones*, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." (emphasis added)), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).  That is the case here.  In fact, by his own admission, Kalia "reboot[ed]" — or renewed — his application for distinguished professorship after he filed his EEOC charge.  Kalia Decl. ¶¶ 14-15.  The pendency of that new application, therefore, does not render Kalia's claims arising from his 2015 bid for distinguished professorship timely.  *See Chukwueze v. N.Y.C. Emps.' Ret. Sys.*, 891 F. Supp. 2d 443, 451 (S.D.N.Y. 2012).

Defendants make a weaker case for dismissal of Kalia's claims relating to the denial of a salary supplement on timeliness grounds, as Kalia alleges that the matter was still pending as of September 14, 2017.  *See* FAC ¶¶ 150, 153.  Ultimately, however, the Court need not and does not address the timeliness of those claims because, for the reasons discussed below, the Court concludes that they fail for other reasons.

**B. Failure to State a Claim**

The Court turns, then, to the merits of Kalia's claims for discrimination with respect to the non-renewal of his salary supplement, retaliation (except insofar as it relates to the 2015 application for distinguished professorship because, as discussed, such claims are untimely), and hostile work environment.  The Court will address each set of claims in turn.

1. **Discriminatory Non-Renewal of the Salary Supplement**

Strangely, although Kalia argues that his discrimination claim based on the non-renewal of the salary supplement is timely, he does not actually counter Defendants' argument that the claim is implausible under Title VII. *Compare* ECF No. 40 ("Pl.'s Opp'n"), at 7-8 (merely articulating the facts surrounding the salary supplement claim), *and id*. at 14-15 (arguing only that Kalia's distinguished professorship discrimination claim is plausible), *with* Defs.' Mem. 10-11. In light of that failure, the Court can and does deem the claim abandoned. *See generally Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016); *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (summary order). But even if not abandoned, Kalia's claim must be dismissed on the merits. To survive Defendants' motion, the allegations in Kalia's Complaint must "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. Such an inference "can arise from circumstances including . . . more favorable treatment of employees not in the protected group." *Id.* at 312 (internal quotation marks omitted). A plaintiff "does not have to prove that the comparators were similarly situated in all material aspects," *Daniels v. City of New York*, No. 17-CV-9960 (LGS), 2019 WL 251511, at *4 (S.D.N.Y. Jan. 17, 2019) (internal quotation marks omitted), but the Court "still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated. Thus, well-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim and conclusory allegations of selective treatment are insufficient." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) (alterations and internal quotation marks omitted); *accord Dooley v.*

*JetBlue Airways Corp.*, No. 14-CV-4432 (JMF), 2015 WL 1514955, at *3 (S.D.N.Y. Apr. 1, 2015), *aff'd in relevant part*, 636 F. App'x 16, 20 (2d Cir. 2015) (summary order).

Conclusory allegations aside, Kalia fails to identify *any* similarly situated counterparts whose salary renewals were not denied, alleging only that "[o]ther non-Indian professors who have never complained of discrimination or been forced to file actions against CCNY to protect their rights and to thwart the discriminatory decisions of CCNY have not been so stripped of their previously granted salary supplements, especially under circumstances when they continued to do the supplemental work that resulted in the original grant." FAC ¶ 144; *see also id.* ¶¶ 145, 181. That does not suffice. *See, e.g.*, *Littlejohn*, 795 F.3d at 311 (requiring a plaintiff to provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent"); *Daniels*, 2019 WL 251511, at *4 (dismissing a claim of racial discrimination based on the plaintiff's failure to describe the circumstances surrounding his and his comparators' work histories or the events leading up to their differing punishments). Accordingly, Kalia's discrimination claim premised on his salary supplement must be and is dismissed.

### 2. Retaliation

Next, to state a retaliation claim, Kalia must "give plausible support to the reduced prima facie requirements" of "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Febrianti v. Starwood WorldWide*, No. 15-CV-635 (JMF), 2016 WL 502027, at *3 (S.D.N.Y. Feb. 8, 2016) (internal quotation marks omitted). More specifically, Kalia must allege that "retaliation was a 'but-for' cause of the employer's adverse action[s]." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (internal quotation marks omitted). "[P]roof of causation can be shown either: (1)

indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Generally, "a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). But retaliation claims relying solely on temporal proximity to demonstrate a causal connection are difficult to prove and the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Measured against these standards, Kalia's remaining retaliation claims fall short. Kalia alleges that (1) he engaged in protected activities when he made complaints on behalf of himself and other CUNY employees, including his most recent filing with the EEOC; (2) Defendants were aware of the protected activity; (3) he suffered an adverse employment action when he was denied the salary supplement and other opportunities, such as teaching graduate courses; and (4) the adverse consequences were a result of his complaints. FAC ¶¶ 206-07. Kalia, however, does not plausibly allege a causal connection between any protected activity and the alleged adverse employment actions. First, Kalia's salary supplement was denied *before* he filed his EEOC charge in 2018. *Id.* ¶ 143. Although Kalia alleges that Occhiogrosso and Weitz campaigned against his distinguished professorship bid because he filed a discrimination lawsuit and charge against CUNY in 1998 and 2002, *id.* ¶¶ 48, 68, Kalia does not plausibly make the same connection between those activities and the denial of his salary supplement. Disregarding conclusory allegations that the school dismantled diversity programs out of racial animus and

13

otherwise disfavored non-Caucasians, *see* Pl.'s Opp'n 15 n.6, Kalia is left with the temporal proximity — or lack thereof — between the 2002 complaint and the alleged adverse action in September 2017.  That is plainly insufficient.  *See, e.g.*, *Jones v. N.Y.C. Bd. of Educ.*, No. 09-CV-4815 (RWS), 2012 WL 1116906, at *14 (S.D.N.Y. Apr. 2, 2012) ("District courts in this circuit consistently have found that an intervening period of more than two to three months is insufficient to establish a causal connection through temporal proximity alone.").  Second, Kalia does not establish precisely when any of the other alleged retaliatory actions took place after he filed the EEOC charge in 2018.  Nor does he plausibly allege that Defendants mentioned that charge when implementing any of the alleged adverse actions against him.  This, too, is not enough.  *See, e.g.*, *Farooq v. N.Y.C. Health & Hosps. Corp.*, No. 19-CV-6294 (JMF), 2020 WL 5018387, at *10 (S.D.N.Y. Aug. 25, 2020).  Accordingly, Kalia's retaliation claims must be and are dismissed.

### 3. Hostile Work Environment

Finally, for Kalia's Title VII hostile work environment claim to survive, he must allege that (1) his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of the work environment; and (2) a specific basis exists for imputing the conduct that created the hostile environment to CUNY.  *See, e.g.*, *Petrosino v. Bell Atl.*, 385 F.3d 210, 214 (2d Cir. 2004).  It is well established that "[i]solated incidents usually will not suffice to establish a hostile work environment," *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175-76 (2d Cir. 2012), and that "[t]he incidents of allegedly offensive conduct must also be 'more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive,'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)).  Hostile work environment

claims are evaluated by looking at all of the circumstances, which may include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  Further, "a plaintiff alleging a hostile work environment claim must also establish that 'the conduct at issue was not merely tinged with offense connotations, but actually constituted *discrimination* because of'" race or another protected category.  *Browne v. City Univ. of N.Y.*, 419 F. Supp. 2d 315, 330 (E.D.N.Y. 2005) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)), *aff'd sub nom. Browne v. Queen's Coll. City Univ. of N.Y.*, 202 F. App'x 523 (2d Cir. 2006) (summary order).

      Applying these standards here, the Court concludes that Kalia's allegations do not clear the plausibility bar.  Kalia claims that he was "strip[ed] of [his] duties"; precluded from teaching graduate courses and sitting on committees; given "an office virtually on top of one of his antagonists"; and "subjected to routine denigration and spiteful looks."  FAC ¶ 191.  Kalia also claims that the denial of his salary supplement, the delay in processing his distinguished professorship bid, and other instances of "harassment and treatment faced by other minorities" contributed to a hostile work environment.  *Id.*; Pl.'s Opp'n 17.  But conclusory assertions aside, Kalia does not plausibly allege that any of this treatment was due to his race or national origin.  *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."); *Pouncy v. Advanced Focus LLC*, No. 15-CV-6260 (JMF), 2017 WL 4280949, at *5 (S.D.N.Y. Sept. 25,

15

2017), *aff'd*, 763 F. App'x 134 (2d Cir. 2019) (summary order) (dismissing hostile work environment claims for similarly failing to establish a connection between the plaintiff's protected characteristics and purported hostile actions against him). Kalia's subjective beliefs to the contrary are "insufficient to satisfy his burden at the pleading stage." *Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 68 (S.D.N.Y. 2015) (internal quotation marks omitted). Nor do Kalia's allegations, taken together, show that Defendants' conduct was sufficiently severe or pervasive to create a hostile work environment. *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7584 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, was not enough to show that the defendants' conduct was sufficiently severe or pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (summary order). Thus, the hostile work environment claim must be and is dismissed.

**B. Kalia's State-Law Claims**

That leaves only Kalia's state-law claims. In light of the dismissal of the federal claims, the Court declines to exercise supplemental jurisdiction over these claims. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The statute does not create "a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*; *see also*

*Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." (internal quotation marks omitted) (citing cases)).

Here, there is no basis to depart from that general rule favoring dismissal of the state, municipal, and common law claims. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)). Kalia's NYCHRL claims, for example, are subject to a different standard and must be analyzed separately. *See, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (noting that NYCHRL claims "require[] an independent analysis"). And while Title VII and NYSHRL claims are subject to the same substantive standards, *see Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 246 (E.D.N.Y. 2015), they are governed by different statutes of limitations, *see id.*, so Kalia's NYSHRL claims relating to his 2015 bid for a distinguished professorship may well be timely. In light of that, Kalia's state and local claims present questions "best left to the courts of the State of New York." *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (declining to reach the question whether the plaintiff had a valid claim under the NYSHRL and NYCHRL after dismissing his federal claim); *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 92-93 (2d Cir. 2011) (summary order) (affirming

dismissal of the plaintiff's federal claims and declining to decide his claims under state and city law on the ground that they were "arguably governed by different legal standards" and the relevant law of New York was "still developing"); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 334 (E.D.N.Y. 2014) (declining supplemental jurisdiction over a NYCHRL claim after dismissing claims under Title VII and the NYSHRL). Given the relatively early state of the case, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider do not counsel in favor of exercising jurisdiction. *Carnegie-Mellon Univ.*, 484 U.S. 343 at 350. Accordingly, Kalia's remaining claims are dismissed without prejudice.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion and dismisses all of Kalia's claims, albeit without prejudice to refiling the state- and local-law claims in state court. Additionally, the Court declines to grant Kalia leave to amend *sua sponte*. Although leave to amend a pleading should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). The Court has already granted Kalia leave to amend, *see* ECF No. 29, and he now neither seeks leave to amend nor suggests that he possesses additional facts that could cure the defects in his dismissed claims, *see, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Furthermore, Kalia was on notice of Defendants' arguments when he filed the Complaint in response to Defendants'

original motion to dismiss, and he was expressly warned that he would "not be given any further opportunity" to amend the Complaint. *See* ECF No. 29, at 1. In light of these circumstances, the Court will not *sua sponte* grant leave to amend. *See, e.g.*, *Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*."); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (alteration and internal quotation marks omitted)).

The Clerk of Court is directed to terminate ECF No. 33, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: November 23, 2020
New York, New York

_____
JESSE M. FURMAN
United States District Judge